United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL UNION OF HEALTHCARE
WORKERS, SONIA ASKEW; ROBIN BLAKE;
LISA ENGLES; DANIELLE ESTRADA;
ANGELA GLASPER; ROBERT HERNANDEZ;
DAVID MALLON; TURUSEW WILSON and
GEORGE WONG,

    Plaintiffs,

 v.

KAISER FOUNDATION HEALTH PLAN, INC.;
KAISER FOUNDATION HOSPITALS; THE
PERMANENTE MEDICAL GROUP, INC.;
SOUTHERN CALIFORNIA PERMANENTE
MEDICAL GROUP,

    Defendants.
                 /

No. C 10-03686 WHA

**ORDER GRANTING
PLAINTIFFS' MOTION
TO AMEND COMPLAINT**

## INTRODUCTION

In this action alleging violation of Section 302 of the Labor Management Relations Act, plaintiffs seek leave to file an amended complaint. For the reasons stated below, the motion to amend is **GRANTED**.

## STATEMENT

The main question is whether the proposed pleading adequately alleges a payment of money to the union in violation of Section 302. Here are the facts alleged. Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, The Permanente Medical Group,

Inc., and Southern California Permanente Medical Group (all "Kaiser") were parties to a collective bargaining agreement with Service Employees International Union-United Healthcare Workers ("SEIU-UHW"). That agreement required Kaiser to provide wages and/or benefits for "lost-timers." Lost-timers are regular Kaiser employees who become paid staff members of the union after requesting up to a one-year unpaid leave of absence from Kaiser to "conduct union business" (Dkt. No. 60 at 7). Pursuant to the collective bargaining agreement, Kaiser continued to provide these lost-timers' benefits and accrued leave (but not salary) during time spent working full-time for the union.

While the lost-timer provision did not define "union business," examples from the contractual agreement between Kaiser and SEIU-UHW reflected traditional contract administration and joint labor-management activities. From 2005 to 2009 the scope of duties was limited to contract enforcement and traditional representation work (*ibid*). No lost-timer engaged in campaigning for SEIU-UHW until Kaiser released employees to campaign for SEIU-UHW during SEIU-UHW's campaign against NUHW. When a few employees were released to work on the 2008 United States presidential campaign, Kaiser did not pay for these employees' benefits while they were on leave (*id.* at 7). So by custom and usage the scope of the lost-timers provision was not meant to be expansive and the number on such leave would be few in number. This conformed to the original intention of the parties when the provision was first negotiated (*ibid.*).

In 2009, a group of former officers of SEIU-UHW formed a rival union, National Union of Healthcare Workers ("NUHW"). In 2010, the National Labor Relations Board ordered a union representation election. Following several objections filed by NUHW, the Board set aside the election results and set a re-run election between SEIU-UHW and NUHW to commence in May 2013 (*id.* at 8–10).

"During SEIU-UHW's representation campaigns against NUHW, which includes but is not limited to June 29, 2010, to the present, SEIU-UHW used hundreds of employees on lost-time from Kaiser to campaign against NUHW, which was a sudden, noticeable, and dramatic increase in the number of Lost-Timers prior to that date" (*id.* at 18). Kaiser knowingly

2

released lost-timers to SEIU-UHW to campaign against NUHW and paid them benefits and other things of value to campaign against NUHW (*ibid.*).

Plaintiffs commenced this action in August 2010, alleging that Kaiser violated Section 302(a) of the LMRA by paying the benefits of SEIU-UHW union members to campaign against NUHW in anticipation of NLRB elections that would determine which union would represent Kaiser's employees. This action was stayed by order dated November 19, 2010. After the stay was lifted, defendants moved to dismiss. The motion was granted with respect to two categories of workers: shop stewards and contract specialists. Plaintiffs timely filed this motion for leave to amend. For the reasons stated below, the motion is **GRANTED**.

## ANALYSIS

### 1. WHETHER THE DISPUTE IS MOOT.

Defendants argue this action has become moot because the Board has certified the April 2013 election results (SEIU-UHW won) and Board orders in certification proceedings under Section 9(c) are not reviewable by a federal court (Dkt. No. 61 at 3). Section 9(c) of the National Labor Relations Act reads, in pertinent part (29 U.S.C. 159 (2006)):

> Whenever a petition shall have been filed . . . by a group of employees or . . . a labor organization acting on their behalf alleging that a substantial number of employees wish to be represented for collective bargaining and that their employer declines to recognize their representative . . . the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice . . . If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

While the Board has certified the April 2013 election, our November 2010 order that stayed this action noted that this lawsuit is part of a larger ongoing dispute between NUHW, SEIU-UHW, and Kaiser (Dkt. No. 23 at 3–4). Since plaintiffs commenced this action in 2010, plaintiffs have challenged Kaiser's payments to lost-timers in relation to two separate representation elections. The collective bargaining agreement between Kaiser and SEIU-UHW has been extended without change through September 30, 2016, and defendants admit that

3

plaintiffs can challenge SEIU-UHW's representational status again in two years, which they plausibly will do (Prop. Amd. Comp. ¶ 23).

"In general, a case is moot if there is no longer any 'present controversy as to which effective relief can be granted.'" *Johnson v. Rancho Santiago Cmty. Coll. Distr.*, 623 F.3d 1011, 1018 (9th Cir. 2010) (citation omitted). Here, however, the present action falls into the "capable of repetition yet evading review" exception to the mootness doctrine. *Id*. at 1018-19. The elements of this exception are: "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is reasonable expectation that the plaintiffs will be subject to it again." *Ibid.*

Our court of appeals has held that *three years* is generally too short to allow a case "seeking a declaratory judgment regarding the legality of [an agreement's] provisions [to] proceed beyond district court review." *Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 964 v. B.F. Goodrich Aerospace Aerostructures Grp.*, 387 F.3d 1046, 1050 (9th Cir. 2004). The two previous representation elections between SEIU-UHW and NUHW, taken together, lasted less than six months, and there is no reason to suppose future representation elections between the two unions would be any different. Because plaintiffs would not be able to litigate their claims within the window of a representation election, plaintiffs have met the durational requirement for the exception to mootness.

It is reasonable to expect that this conduct — the exponential increase of lost-timers to campaign running up to a representation election — will be repeated. Given plaintiffs' continued litigation of this matter, the protracted and hard-fought dispute between the two unions, and plaintiffs' representations herein regarding bringing a future challenge, it is plausible that plaintiffs will again challenge SEIU-UHW's representational status, which would give rise to another election. Absent declaratory or injunctive relief, there is nothing stopping defendants from again releasing a greatly-expanded number of lost-timers to campaign against NUHW. Defendants' conduct is therefore capable of repetition yet evading review.

At oral argument, defendants argued that it is not their burden to negate the possibility of repetition, relying on *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,

4

528 U.S. 167 (2000). In *Friends of the Earth*, plaintiff Friends of the Earth alleged that defendant Laidlaw exceeded the limits of an environmental permit regulating hazardous discharge and filed a lawsuit for non-compliance. During litigation, Laidlaw began complying with the permit, shut down the plant that was emitting the hazardous waste and then argued the controversy had become moot. The Supreme Court held that "a defendant claiming its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonable be expected to occur." *Id.* at 190. It is true that this is not a voluntary compliance case, but a forced compliance case. But the Supreme Court went on to note in *Friends of the Earth* that it is easier for a plaintiff to overcome mootness than to establish standing: "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Ibid.* "[B]y the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal." *Id.* at 191–92. So too here. This case has been litigated for years. Future elections between SEIU-UHW and NUHW are likely and Kaiser's allegedly unlawful conduct is capable of repetition. Given the anticipated short duration of elections, challenges would likely evade review. The dispute is not moot.

**2. SECTION 302.**

Section 302(a) of the LMRA provides:

> It shall be unlawful for any employer . . . to pay, lend, deliver, or agree to pay, lend, or deliver, any money or other thing of value —
>
> (1) to any representative of any of his employees who are employed in an industry affecting commerce; or
>
> (2) to any labor organization, or any officer or employee thereof, which represents . . . any of the employees of such employer who are employed in an industry affecting commerce.

Collective bargaining agreement terms requiring employees to pay union representatives for time doing union work would, at first glance, appear to violate Section 302(a). But there are

5

several exceptions applicable to Section 302(a). Among them is Section 302(c)(1), which renders Section 302(a) inapplicable:

> in respect to any money or other thing of value payable by an employer to . . . any representative of [its] employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer.

### A. Lost-Timers.

Our court of appeals has upheld collective bargaining agreement terms requiring an employer to provide ongoing wages and benefits to union representatives. *Goodrich*, 387 F.3d at 160. In *Goodrich*, the shop steward, a twenty-year mechanic, took a full-time position representing employees' interest in the grievance process. Although he maintained his former job classification, he no longer performed mechanic's work. The shop steward sued the employer because it refused to assign him overtime work as a mechanic. The employer argued that the entire arrangement violated Section 302. *Goodrich* held that because the union representative's services as an employee provided the employer a legitimate benefit, the contractual provision requiring the employer to continue to compensate the union representative was proper because it fell under the exception set forth in Section 302(c)(1). *Goodrich* declined to consider the legality of lost-timers or conceptually similar "paid union leave" arrangements under Section 302, and our court of appeals has not otherwise addressed the issue. *Id.* at 1059.

Defendants cite a number of decisions in support of their argument that courts repeatedly uphold collective bargaining agreements where employees take leaves of absence to work for a union and receive some form of compensation from their employer. *See*, *e.g.*, *Commc'n Workers of Am. v. Bell Atl. Network Serv.*, *Inc.,* 670 F. Supp. 416 (D.D.C. 1987); *Int'l Union, UAW v. CTS Corp.*, 783 F. Supp. 390 (N.D. Ind. 1992); *IBEW LOCAL 2154 vs. Nat'l Fuel Gas Distr. Corp.*, 92-CV-0403 ELH, 1993 U.S. Distr. LEXIS 376 (W.D.N.Y. Jan. 14, 1993); *Caterpillar, Inc. v. Int'l Union, United Auto., Aero., & Agric. Implement Workers*, 107 F.3d 1052 (3d Cir. 1997); *BASF Wyandotte Corp., v. Local 227, Int'l Chem. Workers Union*, 791 F.2d 1046 (2d Cir. 1986). While these decisions suggest that lost-timers provisions in collective bargaining agreements are facially valid, they do not address the factual allegations here. All of these

decisions arise from scenarios pitting a union against an employer in a collective bargaining dispute between the two entities — to wit, employer either planned to break or broke a negotiated collective bargaining agreement, resulting in a loss of benefits to union members, a lawsuit ensued, and the union prevailed.

The facts alleged here, however, deal with a completely different factual scenario. In this case, the employer is not reneging or trying to renege on a prior agreement by taking away benefits. Kaiser is here allegedly violating the agreement by intentionally placing workers on lost-time status *to campaign against a rival union* and dramatically increasing the number of employees on compensated leave for such campaigning. The decisions discussed above, therefore, do not control here. No court has ever held that employers can pay employees under a collective bargaining agreement to campaign under the control of the incumbent union against a rival union. One evil Congress wished to resist was a sweetheart cozy arrangement between the incumbent union boss and the company, for such arrangements persist at the expense of the workers. Yes, the employer likes doing business with such unions. But indirect contributions as alleged here would violate the purpose of Section 302 "to prevent bribery, extortion, shakedowns, and other corrupt practices." H.R. Rep. No. 286, 91st Cong., 1st Sess. 1–2.

In plaintiffs' proposed amended complaint, they allege that in the five years before the run-up to the election, Kaiser released "no more than a handful of employees" on lost-time leave to work for SEIU-UHW in contract enforcement and traditional representative work (Dkt. No. 60 at 7–8). These allegations suggests that the parties' understanding of the collective bargaining agreement, reflected through custom and usage, was that only a small number of lost-timers would be authorized at any given time to work for the union in legitimate collective bargaining activity representing workers in grievances or negotiations with employer.

Under the new pleading, therefore, Kaiser exceeded the scope of the original agreement and simply gave money to SEIU-UHW. During the representation campaign, to repeat, Kaiser released "hundreds of employees" on lost-time leave to campaign against NUHW (Dkt. No. 60 at 11). The lost-timers did campaign against plaintiff NUHW and Kaiser provided benefits and other things of value to the lost-timers while they were released on lost-time leave (*ibid.*).

7

This was tantamount to making cash campaign contributions to SEIU-UHW to assist SEIU-UHW in fending off the upstart rival NUHW. In contrast to the shop steward in *Goodrich*, campaigning for an incumbent union against a rival union does not provide a legitimate benefit to the employer under *Goodrich.* Plaintiffs' motion to file an amended complaint is therefore **GRANTED**.

### 3. REQUEST FOR JUDICIAL NOTICE.

Defendants request that judicial notice be taken of an excerpt of the official report of proceedings before the Board, the Board's official announcement that SEIU-UHW prevailed in the election over NUHW, and the Board's certification of representation. Plaintiffs request judicial notice of the Board's official announcement setting the date for the re-election and the Board's administrative law judge report and recommendations on objections. As this order does not rely on these documents, the requests are **DENIED AS MOOT**.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for leave to file an amended complaint is **GRANTED**. No more motions to dismiss may be filed inasmuch as the viability of the proposed pleading has already been vetted. The answer is due within ten calendar days.

**IT IS SO ORDERED.**

Dated: June 12, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8